**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| MIDCENTRAL EQUIPMENT SERVICES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>INDIAN CREEK FABRICATORS, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 3:25-cv-00379<br><br>Magistrate Judge Caroline H. Gentry<br>(by full consent of the parties) |

# DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO TRANSFER CASE (DOC. NO. 29)

Currently pending before the Court is Plaintiff's Motion to Transfer Case (Doc. No. 29), which is fully briefed. Although styled as a Motion to Transfer, the Motion actually seeks to ***retransfer*** this matter back to the United States District Court for the Western District of Oklahoma, which is the court that transferred this case to this Court. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

### A. In March 2024, Indian Creek Fabricators Sued MidCentral Energy Partners in the United States District Court for the Southern District of Ohio, Case No. 3:24-cv-00096 ("the First Case")

On March 27, 2024, Indian Creek Fabricators, Inc. ("ICF") sued MidCentral Energy Partners LLC ("MCEP") for breach of contract in a different lawsuit pending in the United States District Court for the Southern District of Ohio ("this Court"). That

lawsuit was assigned S.D. Ohio Case Number 3:24-cv-00096 and is hereinafter referred to as "the **First Case**."

ICF is a "family-owned metal fabrication company located in Tipp City, Ohio that performs machining, welding, painting, and finishing work." (First Case Complaint, Doc. No. 1, PageID 2.) MCEP "is an energy services provider located in Oklahoma City, Oklahoma that provides goods and services, including … pressure pump manufacturing and maintenance." (*Id*. at PageID 3.) ICF manufactured and supplied pump power frames to MCEP over a period of years. (*Id*.) "[W]hen [MCEP] sought to purchase goods and services products from [ICF], it would send [ICF] drawings or 'prints' to which the products were to conform.... [ICF] would then respond with a quotation and [MCEP] would accept the quotation by issuing a purchase order." (*Id*.) The dispute in the First Case arises from a 2022 Agreement between ICF and MCEP for the provision of thirty-five (35) frames (the "**Ohio Frames**"). (*Id*.)

In its Answer, MCEP stated in its Seventh Defense: "Any recovery by Plaintiff in relation to Plaintiff's Complaint is barred by the doctrines of recoupment and/or set-off." (First Case Answer, Doc. No. 8, PageID 41.)

### B. In January 2025, MidCentral Equipment Services Sued Indian Creek Fabricators in the United States District Court for the Western District of Oklahoma, Which Transferred the Lawsuit to the United States District Court for the Southern District of Ohio, Case No. 3:25-cv-00379 ("the Second Case")

On January 23, 2025, MidCentral Equipment Services, LLC ("MCEQ") sued ICF for breach of contract and other claims in a lawsuit filed in the United States District Court for the Western District of Oklahoma ("**Oklahoma Court**"). The Oklahoma Court

subsequently transferred that lawsuit (this case) to this Court, which assigned it S.D. Ohio Case Number 3:25-cv-00379. It is hereinafter referred to as "the **Second Case**."

MCEQ is a Texas limited liability company that has its headquarters and principal place of business in Oklahoma. (Second Case Complaint, Doc. No. 1, PageID 1.) MCEQ provides materials, equipment, and services to clients in the energy industry. (*Id*.) The dispute in the Second Case arises from a 2023 Agreement between ICF and MCEQ to provide twenty-two (22) frames (the "**Oklahoma Frames**"). (*Id*. at PageID 4.)

### C. The Oklahoma Court Granted ICF's Motion to Transfer The Second Case to The Southern District of Ohio

In response to MCEQ's filing of the Second Case in the Oklahoma Court, ICF filed a "Motion to Dismiss, Or In The Alternative, To Stay, or In The Second Alternative, To Transfer" that lawsuit to this Court. (Doc. No. 8.) ICF primarily argued that the Oklahoma Court should dismiss or stay the Second Case because (1) MCEQ's claims are unasserted compulsory counterclaims in the First Case, and (2) MCEQ waived its right to assert claims in a separate case by asserting setoff and recoupment as defenses in the First Case. (*Id*. at PageID 35-43.) Alternatively, ICF argued that the Oklahoma Court should transfer the Second Case to this Court under the first-to-file rule and based upon the balance of convenience to the parties. (*Id*. at PageID 48-49.)

In opposition to ICF's request to dismiss or stay, MCEQ argued that "[b]ecause a final judgment on the merits has *not* been rendered in the [First] Case, Oklahoma law does not bar the claims asserted here (even assuming these claims are considered compulsory counterclaims)." (Doc. No. 12, PageID 309-10 (emphasis in original).)

MCEQ also argued that ICF's cited cases did not support its argument that asserting setoff and recoupment as defenses waived MCEQ's ability to assert separate claims in a separate lawsuit. (*Id.*)

MCEQ opposed ICF's alternative request to transfer the Second Case on two grounds. First, MCEQ argued that because the issues in the First Case and the Second Case "are not similar … and do not substantially overlap," the first-to-file rule does not apply.[1] (Doc. No. 12, PageID 319.) MCEQ argued that the cases "are not even *remotely* identical" because they "address wholly separate and independent transactions." (*Id.* at PageID 319-20 (emphasis in original).) Next, MCEQ argued that the balance of convenience factors weigh heavily against transfer. (*Id.* at PageID 321-27.)

After carefully considering the parties' arguments, Western District of Oklahoma District Judge Scott L. Palk granted ICF's Motion in part and transferred the Second Case to this Court based upon the first-to-file rule. (Transfer Order, Doc. No. 14, PageID 342.) Noting that the first-to-file rule requires only a "substantial overlap" of the issues in the First Case and the Second Case, Judge Palk found that such an overlap exists:

> In its Response, [MCEQ] states there is no overlap between the *claims* of the respective plaintiffs in the Ohio Action and the present action…. Importantly though, [MCEQ] did not delineate its setoff and "breach of contract" *affirmative defenses* in the Ohio Action from the claims it raises in the present action. It is not disputed that ICF and the MidCentral entities engaged in various transactions over the span of several years. By asserting setoff as an affirmative defense in the Ohio Action,[2] any additional

[1] MCEQ conceded that the First Case was indeed filed first, and that the parties (MCEP and MCEQ) are sufficiently similar for purposes of the first-to-file analysis. (Doc. No. 12, PageID 319.)

[2] Judge Palk stated in this footnote: "Under both Oklahoma and Ohio law, the defense of setoff 'permits the set-off of an obligation under one contract against the obligation of *any other contract* between the same parties." *Bluff Creek Townhomes Assn., Inc. v. Hammon*, 451 P.3d 212, 217 (Okla. App. Div. 4

> transactions of the parties could be asserted in the defense, which would include the purchase orders at issue in the present action.[3] [MCEQ] notes that shipping and replacement costs for the Ohio Frames were *in part* the basis for the affirmative defenses of recoupment and setoff in the Ohio Action…. However, [MCEP's] assertion of setoff and ICF's "own prior, and ongoing, breach of contract" in the Ohio Action contemplate the transactions at issue in the present action. As such, the affirmative defenses in the Ohio Action bear enough of a relation to the claims asserted in the [Second Case] for the Court to find a "substantial overlap" of the issues.
>
> Moreover, both actions relate to purchase of hydraulic fracturing pump frames manufactured by ICF and purchased by a MidCentral entity. These actions both involve the contractual obligations, if any, of the respective parties as to the transactions for the Ohio Frames and the Oklahoma Frames. The MidCentral entities and ICF had a longstanding relationship with similar transactions, and such prior dealings may affect the potential obligations of the parties. A significant portion of the events giving rise to the actions take place in the same relative period. Despite involving different styles of pump frames, both cases would necessarily rely on evidence of the design and manufacturing process of the ICF frames.

(*Id*. at PageID 347-48.) Judge Palk concluded that due to "the overlapping legal issues, the overlapping of substantial amounts of evidence, as well as the potential of conflicting judgments between the present action and the Ohio Action," the first-to-file rule applied and warranted transfer of the Second Case. (*Id*. at PageID 349.)

Judge Palk also considered and rejected MCEQ's equitable argument that the discretionary factors set forth in 28 U.S.C. § 1404(a) weigh against transferring the

2019) (emphasis added and citations omitted); *Triangle Properties, Inc. v. Homewood Corp.*, 3 N.E.3d 241, 255-56 (Ohio App. 10th Dist. 2013) (setoff is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction") (citations omitted).

[3] Judge Palk stated in this footnote: "[MCEP's] affirmative defense of ICF's "own prior, and ongoing breach of contract" is vague and ambiguous as to what contract(s) is being referenced. Due to this ambiguity, the affirmative defense may also be referencing the transactions at issue in the [Second Case]."

Second Case. Judge Palk held that the first-to-file rule modifies the traditional analysis under Section 1404 by eliminating deference to the plaintiff's choice of forum in the second-filed action. (Transfer Order, Doc. No. 14, PageID 349-50 (citing *In re Nitro Fluids LLC*, 978 F.3d 1308, 1311-12 (Fed. Cir. 2020)).) He found that some factors balanced each other, and that "the presence of the manufacturing facility for the frames and many of the frames at issue being in the judicial district for the Southern District of Ohio weighs in favor of transfer.[4]" (*Id*. at PageID 350.) In addition, Judge Palk found that "[t]he substantial progress in the Ohio Action, practical considerations of judicial efficiency, as well as the avoidance of duplicative discovery and litigation of issues … also favor transfer." (*Id*. at PageID 351.)

### D. MCEQ's Motion to Transfer This Case to the United States District Court for the Western District of Oklahoma

After this lawsuit was transferred to this Court, MCEQ filed the pending Motion to Transfer. MCEQ effectively asks this Court to conduct an indirect review of the Transfer Order and reverse it on the grounds that it is not "supported by a proper application of the record facts together with the appropriate burdens of the parties." (Doc. No. 29, PageID 33.) MCEQ also argues that "the Transfer Order is manifestly erroneous in that (i) ICF did not and cannot establish that the two cases are substantially overlapping and (ii) it relies upon unsupported facts concerning venue." (*Id*. at PageID 37.)

[4] Judge Palk stated in this footnote: "The fact that the [Oklahoma Frames] are located within the judicial district for the Northern District of Texas is not a factor that weighs against transfer. Rather, [MCEQ] has further establishes that substantial evidence exists *outside* of the area encompassing this [Oklahoma] Court's judicial district." (Doc. No. 14, PageID 350 n.7 (emphasis in original).)

As to the first point, MCEQ argues that "the two cases involve distinct contracts (the purchase orders) and issues with the Frames ordered pursuant thereto." (Doc. No. 29, PageID 38.) MCEQ argues that the affirmative defenses of recoupment and set-off in the First Case do not create any overlap, stating that MCEP asserted those defenses because:

> MCEP identified issues with the first two Ohio Frames delivered to it and arranged and paid for return thereof to ICF the day after receipt…. Thereafter, MCEP arranged and paid for these Frames to be re-delivered to it. MCEP found that the Frames still had the same issues, and, again, paid to have them re-returned to ICF…. These expenses *plus* replacement costs for the thirty-five Ohio Frames is (***in part***) the basis for MCEP's defenses of recoupment and set-off—not the damages asserted in the Oklahoma lawsuit.

(*Id*. at PageID 34 n.4 (first emphasis in original, second emphasis added).) MCEQ also argues that its claims in the Second Case cannot be compulsory counterclaims in the First Case because those claims did not become ripe until after MCEP filed its Answer in the First Case. (*Id*. at PageID 32, 38-39.)

As to the second point, MCEQ asserts that the Oklahoma Court clearly erred when it stated that "many" of the Frames are in Ohio because nineteen of the twenty-two frames at issue in the Second Case are located in Texas. (Doc. No. 29, PageID 40 n.10.) MCEQ also argues that the Oklahoma Court clearly erred by relying on the fact that the Frames are manufactured in Ohio, as "none of the claims asserted [in the Second Case] (on their face) necessitates a physical inspection of ICF's processes in Ohio." (*Id*. at PageID 40.)

In addition to arguing that the Transfer Order is clearly erroneous, MCEQ argues that "continued enforcement of the Transfer Order would be unjust" because any progress

the parties have made in litigating the First Case is irrelevant to the litigation of MCEQ's claims in the Second Case. (Doc. No. 29, PageID 41.)

Finally, MCEQ argues that the discretionary factors in 28 U.S.C. § 1404(a) weigh in favor of retransfer. (Doc. No. 29, PageID 42-49.) MCEQ also asserts that *ICF* bears the burden of showing that retransfer is *not* appropriate, stating: "Because ICF opposes *retransfer* back to MCEQ's chosen forum, the factors must 'strongly favor' hearing this Oklahoma Action in this Ohio Forum to avoid transfer to MCEQ's preferred Oklahoma Forum." (*Id*. at PageID 36 (emphasis in original).)

In response, ICF contests MCEQ's presumption that this Court should address the merits of MCEQ's first-to-file and balance of convenience arguments, given that the Oklahoma Court has already ruled on those issues. (Doc. No. 31, PageID 63.) ICF argues that "the law of the case doctrine applies to the Transfer Order, which may ***only*** be overturned for clear error or manifest injustice and there is none." (*Id*. (emphasis in original).) ICF also argues that as the moving party, MCEQ bears the burden of showing that the Section 1404 factors weigh in favor of retransferring this case. (*Id*.)

ICF also argues that issues in the two cases substantially overlap. ICF challenges MCEQ's explanation of the affirmative defenses of recoupment and set-off asserted in MCEP's Answer in the First Case. (Doc. No. 29, PageID 60-62, 68-70.) In addition, ICF asserts that the Oklahoma Court correctly observed that evidence about the parties' long relationship may bear upon the relevant course of dealing and course of performance in both cases, which provides additional overlap between the cases. (*Id*. at PageID 71.)

Next, ICF argues that the Oklahoma Court did not clearly err regarding the facts it relied upon in the Transfer Order. (Doc. No. 29, PageID 70-71.) Noting that "MidCentral has already conducted a physical inspection of ICF's Ohio facility to evaluate the Ohio Frames," ICF argues it is "plausible that it will do so again for the Oklahoma Frames." (*Id*. at PageID 71.) ICF also represents that the frames that are at issue in the First Case are, indeed, located in Ohio. (*Id*.)

Finally, ICF argues that the discretionary factors in 28 U.S.C. § 1404(a) weigh in favor of keeping the Second Case in this Court. (Doc. No. 29, PageID 73-78.)

## II. LAW AND ANALYSIS

### A. Applicable Legal Standard

The law of the case doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). This doctrine "applies 'with even greater force to transfer decisions than to decisions of substantive law'" due to the risk that reconsideration of a transfer decision will "forc[e] a transferred case into perpetual litigation by playing 'jurisdictional ping-pong.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Christianson v. Colt*, 486 U.S. 800, 816 (1988)). Based on this doctrine and the principle of judicial comity, "transferee courts have expressed a strong reluctance to review a transfer order indirectly by means of a motion to transfer." 15 Wright, Miller & Cooper, Fed. Prac. & Proc. § 3846 (3d ed.).

Therefore, although a federal court may "revisit prior decisions of its own or of a coordinate court," it "should be loath[] to do so in the absence of extraordinary

circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson*, 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618 n.8). Because the requirement to demonstrate clear error and manifest injustice sets a high bar, motions to retransfer rarely succeed. *See In re Levang*, 154 F.4th 444, 451 (6th Cir. 2025) ("[W]hile a motion to retransfer is 'theoretically available,' the high likelihood that it would be 'futile' is enough to make it inadequate for mandamus purposes.") (citation omitted).[5]

Here, because MCEQ seeks to retransfer this matter to the Oklahoma Court, it bears the burden of demonstrating that the Transfer Order is (1) clearly erroneous and (2) will work a manifest injustice on it.

As to the first requirement, clear error is "found only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 808 (6th Cir. 2015) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 673 (1985)). Clear error may exist, for example, if the transferor court's rationale was not plausible. *Greene v. Ab Coaster Holdings, Inc.*, No. 2:10-cv-38, 2010 U.S. Dist. LEXIS 91671, at *11 (S.D. Ohio Aug. 5, 2010). But if the court "had to decide between two plausible stories … its choice couldn't have been clearly erroneous." *McCormick v. U.S.*, 72 F.4th 130, 133 (6th Cir. 2023).

---

[5] Alternatively, retransfer "may be perfectly appropriate … on a showing of changed circumstances, particularly when such developments would frustrate the purpose of the change of venue." 15 Wright, Miller & Cooper, Fed. Prac. & Proc. § 3846 (3d ed.). When retransfer is sought on this ground, then the transferee court is not placed "in the position of reviewing the transferor court's decision" because it is instead asked to make a new decision based upon materially different facts. *Urban Interests, LLC v. Fluid Market, Inc.*, No. 25-1165, 2026 U.S. Dist. LEXIS 37381 (D. Del. Feb. 24, 2026) (internal quotations and citations omitted). MCEQ has not argued that changed circumstances justify retransfer.

As to the second requirement, the Sixth Circuit has "not offer[ed] clear guidance as to what qualifies as 'manifest injustice'" although "the plain meaning of those words is instructive." *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 330-31 (6th Cir. 2014). The Court notes the following definition offered by Ohio courts:

> Although no precise definition of "manifest injustice" exists, in general, "'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Wooden*, 10th Dist. Franklin No. 03AP-368, 2004-Ohio-588, ⁋10 (*quoting State v. Hall*, 10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939; *see also State v. Odoms*, 10th Dist. Franklin No. 04AP-708, 2005-Ohio-4926 (*quoting State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 1998-Ohio-271, 699 N.E.2d 83 ("A manifest injustice has been defined as a 'clear or openly unjust act.'").

*State v. Wise*, 5th Dist. Coshocton No. 2021-CA-0001, ⁋16. The Court further notes that "manifest" is defined as "capable of being readily and instantly perceived … not hidden or concealed … capable of being easily understood or recognized at once by the mind, not obscure, obvious." Webster's Third New Int'l Dictionary (1981). Accordingly, to establish that the Transfer Order has worked a manifest injustice, MCEQ must show that it resulted in a miscarriage of justice, was inconsistent with the demands of due process, was an openly unjust act, or otherwise rose to the level of an obvious injustice.

**B. MCEQ Has Not Demonstrated That the Transfer Order Is Clearly Erroneous**

MCEQ devotes most of the arguments in its Motion to relitigating the issues of whether the first-to-file rule applies in this case and whether the discretionary factors in 28 U.S.C. § 1404(a) require that this case be venued in Oklahoma. But under the law of the case doctrine and principles of judicial comity, this Court will not revisit its sister

court's decision unless it concludes that the Transfer Order (1) is clearly erroneous, and (2) has worked a manifest injustice on MCEQ. Because MCEQ has not satisfied these requirements, the Court will not accept its invitation to reconsider the Transfer Order.

MCEQ raises two arguments in support of its contention that the Transfer Order is clearly erroneous. First, MCEQ asserts that the Oklahoma Court clearly erred by finding substantial overlap between the First Case and Second Case. (Doc. No. 29, PageID 37.) MCEQ argues that because the claims in the two cases involve different frames, contracts and alleged defects, the cases do not overlap at all. In response, ICF argues that when MCEP pled recoupment and setoff as affirmative defenses in the First Case, it placed at issue in the First Case all other claims MidCentral might assert against ICF—including the claims that MCEQ has asserted in the Second Case.

This Court need not decide, at this juncture, which argument is correct. It is sufficient to conclude, as this Court does, that ICF's argument is plausible. And because it is plausible, the Oklahoma Court did not clearly err when it relied upon ICF's argument to find that the first-to-file rule applied and warranted transfer of the Second Case to this Court. *McCormick v. U.S.*, 72 F.4th at 133 (holding that if the court "had to decide between two plausible stories … its choice couldn't have been clearly erroneous.").

MCEQ also argues that the Oklahoma Court clearly erred by relying "upon unsupported facts concerning venue." (Doc. No. 29, PageID 37, 40.) MCEQ alleges two factual errors. First, MCEQ challenges the Oklahoma Court's reliance upon the fact that the frames were manufactured in Ohio, arguing that this fact is irrelevant because "none of the claims asserted here (on their face) necessitates a physical inspection of ICF's

processes in Ohio." (*Id*. at PageID 40.) In response, ICF states that MCEP has already inspected its manufacturing facility in Ohio with respect to the claims in the First Case and argues that it is plausible that MCEQ will decide to obtain the same discovery in the Second Case. The Court agrees that it is plausible that ICF's manufacturing processes will be the subject of discovery in the Second Case. Therefore, the Transfer Order is not clearly erroneous in this respect.

Turning to its second alleged error, MCEQ argues that the Oklahoma Court's statement that "many of the frames at issue being in the judicial district for the Southern District of Ohio weighs in favor of transfer" is clearly erroneous, because nineteen of the twenty-two frames at issue in the Second Case are in Texas. (Doc. No. 29, PageID 40 n.10.) But the Oklahoma Court did not find that these nineteen frames are in Ohio. To the contrary, the Oklahoma Court stated that "[t]he fact that the [nineteen] Inventory Frames and the Failed Frames are located within the judicial district for the ***Northern District of Texas*** is not a factor that weighs against transfer" because they are outside the Western District of Oklahoma. (Doc. No. 14, PageID 350 n.7 (emphasis added).)

Thus, this Court reads the challenged statement as referring to the frames at issue in the First Case (which are located in Ohio), as well as to the Oklahoma Court's earlier statement that "[d]espite involving different styles of pump frames, both cases would necessarily rely on evidence of the design and manufacturing process of the ICF frames." (*Id*. at PageID 348.) Viewed in this light, the challenged statement is not erroneous at all, much less clearly erroneous. Although MCEQ might dispute its relevance to the Section 1404(a) analysis, its relevance (as opposed to its correctness) is not at issue here.

Accordingly, MCEQ has not shown that the Transfer Order is clearly erroneous. This Court therefore will not revisit the law of the case established by that decision.

### C. MCEQ Has Not Demonstrated That the Transfer Order Is Manifestly Unjust

The Court also finds that MCEQ has not established that the Transfer Order is manifestly unjust. For this reason, too, the Court will not reconsider the Transfer Order.

MCEQ's primary argument that the Transfer Order is unjust is that it wrongly cites the parties' progress in litigating the First Case as a rationale for issuing the Order. This argument, however, merely quibbles with the Oklahoma Court's rationale for the Transfer Order. It does not provide any basis for concluding that the transfer of this case from Oklahoma to Ohio either has worked or will work a manifest injustice on MCEQ.

MCEQ also appears to argue that if the First Case and Second Case are not consolidated, then the purpose of transferring the Second Case from Oklahoma to Ohio will be frustrated and a manifest injustice will result. This argument is plainly not ripe, as the parties have not raised or requested consolidation of the two cases. The Court and the parties will soon discuss that issue, however.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Transfer Case to the Western District of Oklahoma (Doc. No. 29) is **DENIED.** Accordingly, the stay entered in this case on December 10, 2025 is **LIFTED**. The Court shall contact counsel in this case and the related case of *Indian Creek Fabricators, Inc. v. MidCentral Energy Partners LLC*, S.D. Ohio 3:24-cv-00096-CHG, to schedule a conference call to discuss next steps.

Counsel should be prepared to discuss a case schedule in both cases and the potential consolidation of the First and Second cases.

**IT IS SO ORDERED.**

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge